**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MICHAELA HEMPHILL, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-CV-1391 |
| | ) | |
| LINDA MCMAHON, Secretary of the | ) | |
| United States Department of Education, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**JOINT STATUS REPORT**

Pursuant to this Court's September 10, 2025 and November 26, 2025 Minute Orders, the parties provide this joint status report.

**<u>Joint Statement</u>**

This case seeks class-wide relief pursuant to 5 U.S.C. § 706 on behalf of certain students who enrolled in the Criminal Justice program at Westwood College in Illinois and are part of a request submitted in 2016 by the Illinois Attorney General's Office to the U.S. Department of Education to have their federal student loans discharged. Plaintiffs filed an Amended Complaint on August 17, 2022. ECF No. 18. Defendants, Linda McMahon, in her official capacity as the Secretary of Education, and the United States Department of Education (together, "the Department") filed an Answer to Plaintiffs' Amended Complaint on August 25, 2022. ECF No. 19. There are no pending briefing deadlines in the case.

A summary of the Department's decision to discharge all remaining federal student loans for Westwood College borrowers, and the Department's actions following that decision, are provided in the parties' prior Joint Status Reports ("JSRs"). *See, e.g.*, ECF No. 46. As noted, the

Department's consistent position, across at least three Administrations, is that the Department is obligated to effectuate relief that has been finally approved, even if the steps to effectuate it are incomplete, and that any amount finally approved for relief reflects unenforceable debt that cannot be legally collected. *Id.* at 3. To that end, eligible loans, including any consolidation loan that includes eligible loans, will remain paused in forbearance or stopped collections unless the borrower expressly opts out of forbearance or stopped collections. *Id.* Likewise, any future attempts to collect on or enforce repayment obligations on eligible loans would be without any legal basis and the Department is legally required to eventually effectuate the discharges, refunds, and other relief described above, as the notices of the Department's final action explained. *Id.*

The Department provides the below updates to the data found on page 2 of the previous JSR (filed on March 13, 2026), *see* ECF No. 52 at 2, in the same form as previously provided.

> Of those borrowers with <u>only</u> Department-held loans, approximately 44,000 borrowers (or 89%) have received discharges **and approximately 5,300 borrowers have discharges outstanding or possibly incomplete.**[1] Of those borrowers with <u>only</u> FFEL loans not held by the Department, approximately 7,700 borrowers (or 91%) have received discharges **and approximately 800 borrowers have discharges outstanding or possibly incomplete**. Of those borrowers who have a mix of qualified FFEL and Department-held loans, approximately 13,000 borrowers (or 64%) have received discharges **and approximately 7,400 borrowers have discharges outstanding or possibly incomplete**. In addition, discharges are currently in process for approximately 13,400 borrowers (or 17%) in the three different categories combined.

This represents an increase since the prior JSR of approximately 100 borrowers in the category of borrowers with only Department-held loans, and approximately 50 borrowers in the other two categories combined (borrowers with only FFEL loans not held by the Department and

---

[1] For purposes of this paragraph, "possibly incomplete" generally means that the Department has not yet confirmed that the loan has been fully discharged (even though, in fact, the discharge may be complete). This is intended to err on the side of underreporting, rather than overreporting, completed discharges.

borrowers with a mix of qualified FFEL and Department-held loans).[2]    As with the numbers provided in previous JSRs, these statistical categories vary from those reported before July 2024 due to the reliance in this report on National Student Loan Data Systems ("NSLDS") data rather than servicer data and also because these numbers have been updated to reflect borrower-based information, which more accurately reflects the status of borrowers' discharges, rather than loan-based information.  *See* ECF No. 36 at 4 (describing the change in methodology).  The Department has also clarified that the data is rounded and may not sum precisely.

Using a revised logic that the Department intends to apply in future JSRs[3] results in the following data:

> Of those borrowers with only Department-held loans, approximately 45,900 borrowers (or 91%) have received discharges **and approximately 4,700 borrowers have discharges outstanding or possibly incomplete.**  Of those borrowers with only FFEL loans not held by the Department, approximately 8,300 borrowers (or 91%) have received discharges **and approximately 800 borrowers have discharges outstanding or possibly incomplete**.  Of those borrowers who have a mix of qualified FFEL and Department-held loans, approximately 12,000 borrowers (or 65%) have received discharges **and approximately 6,500 borrowers have discharges outstanding or possibly incomplete**.  In addition, discharges are currently in process for approximately 12,000 borrowers (or 15%) in the three different categories combined.

### Defendants' Statement

As explained in previous JSRs, the Department is committed to effectuating the remaining discharges for eligible Westwood borrowers as expeditiously as practicable.  *See, e.g.*, ECF No.

---

[2] Totals may not sum as expected due to rounding.

[3] The change in logic is based on the Department's increased understanding of consolidation linking after working with a vendor to understand the data models and to gain capacity to do consolidation linking on loans which have received a borrower defense discharge. The new logic that is reflected in the second version of the April data reflects progress in being able to confirm completion and reduces incidents of underreporting completion.

49 at 3. As the data above shows, the Department has completed the discharges of the vast majority of borrowers with only Department-held, and only FFEL, loans. *See supra* at 2. The Department has stated that it will strive to complete the remaining discharges for all three categories of loans by the end of March 2027, *see* ECF No. 49 at 3, but it has also noted that recent events in *Sweet v. McMahon*, 19-cv-3674-WHA (N.D. Cal.), have reduced the likelihood that the Department will be able to meet that timeline, *id.* at 5. That remains true.

As previously explained, in *Sweet*, the Department moved in November 2025 to extend its January 28, 2026 deadline to adjudicate the remaining approximately 198,000 borrower-defense applications at issue in that case. *Id.* at 3. The Department sought an 18-month extension, to July 28, 2027, with any relief due to borrowers to be required one year after the borrower's application is adjudicated (*i.e.* no later than July 28, 2028). *Id.* at 3-4. On December 11, 2025, the court largely denied the Department's motion, ordering it to adjudicate the applications of the majority of *Sweet* borrowers (approximately 171,000 applications) by the original January 28, 2026 deadline (the "January tranche"). *Id.* at 4. The court also partially granted the Department's motion, providing a brief extension to April 15, 2026, for the Department to adjudicate the applications of the remaining *Sweet* borrowers (approximately 18,000 applications) (the "April tranche"). *Id.*

On January 22, 2026, the Department filed a Rule 60(b) motion for relief from the court's December 2025 ruling regarding the January tranche, asking again that the deadline for adjudicating the remaining applications in that tranche be extended to July 28, 2027. *See* ECF No. 50 at 4. On February 24, 2026, the *Sweet* court denied the Department's Rule 60(b) motion, and the Department filed a notice of appeal from that ruling (as well as the December 2025 ruling) the

same day.  In addition, on February 27, 2026, the Department filed an Emergency Motion with the Ninth Circuit for a stay by March 26, 2026 pending appeal, which was denied on March 25, 2026.

As previously indicated, given these developments and absent relief from the Ninth Circuit, the Department will not have meaningful additional availability during 2026 to work on effectuating relief for the remaining, eligible Westwood borrowers.  *See* ECF No. 50 at 5.  That is, unless and until the Ninth Circuit reverses the *Sweet* rulings, the Department anticipates that by April 2026, it will be working with its servicers to effectuate discharges for all *Sweet* borrowers in the January tranche whose applications were not adjudicated by the January 28, 2026 adjudication deadline, which remains in excess of 1.2 million loans, as well as to discharge the loans of applications that were approved by the January 28, 2026 deadline.  That work will continue over the course of 2026 so that the Department can meet the 2027 relief deadlines for the borrowers in the January tranche.  In addition, the Department will be working up to April 15, 2026 to adjudicate the remaining *Sweet* applications, and it will be working with servicers through the spring and early summer of 2027 to effectuate relief for borrowers in the April tranche who are approved for relief or for whom the Department does not adjudicate their applications by the April 15, 2026 adjudication deadline.

Notwithstanding these constraints, the Department will continue to make efforts to complete remaining discharges of eligible Westwood borrowers as expeditiously as practicable, and it will provide an update on any further progress in the next JSR, which is due by May 13, 2026.

Regarding Plaintiffs' proposal that the Department "publicize the name and email address of a specific individual at Federal Student Aid to address [Westwood] borrower issues as they arise," *see, e.g.*, ECF No. 49 at 6, the Department previously stated that it was considering an

alternative process whereby Westwood borrowers' complaints would be entered into the Ombudsman's existing complaint system with identifiers unique to Westwood borrowers, with details still under consideration, *see id.*  After further consideration of staff resources, the Department has determined that it is no longer feasible to pursue that alternative.  Nevertheless, Westwood borrowers, like borrowers from any other school, currently have access to the complaint process available through FSA's Ombudsman's Office.

The Department again reiterates that all of the loans—Department-held or otherwise—for the three Plaintiffs in this case have been discharged.  *See, e.g.*, ECF No. 46 at 4.  Accordingly, this case does not present a proper vehicle for adjudicating or settling the unpleaded § 706(1) unreasonable delay claims of nonparties.  As to those borrowers whose loans are not yet discharged, their loans remain in forbearance.  *See id.*  Moreover, "questions posed to the government's litigation counsel" are an improper mechanism for seeking new agency statements of policy.  *See Nat'l Family Planning and Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006); *see also Dep't of Educ. v. Brown*, 600 U.S. 551, 565 (2023) (explaining that "a party's recourse to induce an agency to take a desired action is [not] to file a lawsuit"); *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 610-11 (1st Cir. 1989).

### Plaintiffs' Statement

In August 2022, the Department made a promise: (i) to discharge federal student loans relating to attendance at Westwood College incurred between January 2002 until the school's closure; (ii) to ensure that discharged debt is removed from borrower credit reports, (iii) and to refund payments made to the Department on discharged loans.  According to the Department's own data, it has not fulfilled that promise to roughly 14,000 borrowers.

The Department has repeatedly conceded, as it must, that it is "legally required" to effectuate its August 2022 decision. *See, e.g.*, *supra* at 2. Nevertheless, although the Department states that it will "strive to complete" this process by March 2027, that date is illusory. The Department readily admits that it "will not have meaningful additional availability during 2026 to work on effectuating relief for the remaining, eligible Westwood borrowers." *Id.* at 5.

Plaintiffs have proposed to the Department ways to expedite the process—including through the use of methods voluntarily deployed, and later court ordered, in a similar context. *See* ECF No. 48 at 10 (describing the adoption and use of the "terminal loan methodology" in the *Sweet* case). The Department has rejected using that approach here. *Id.* at 12-13. Likewise, Plaintiffs have proposed steps that would alleviate the burden on borrowers awaiting action. *Id.* at 13 (suggesting the naming of a dedicated lane for borrower concerns relating to Westwood). That too has been rejected. *Supra* at 5-6. The Department has made no suggestions of its own.

Dated: April 13, 2026                     Respectfully submitted,

BRETT A. SHUMATE                          /s/ Daniel A. Zibel
Assistant Attorney General                Daniel A. Zibel (D.C. Bar No. 491377)
                                          Eric Rothschild (D.C. Bar No. 1048877)
MICHELLE R. BENNETT                        NATIONAL STUDENT LEGAL
Assistant Branch Director                 DEFENSE NETWORK
                                          1701 Rhode Island Ave. NW
*/s/ Liam C. Holland*                      Washington, DC 20036
LIAM C. HOLLAND                           (202) 734-7495
Trial Attorney                            dan@defendstudents.org
United States Department of Justice       eric@defendstudents.org
Civil Division, Federal Programs Branch
1100 L Street NW                          Kyra Taylor* (D.C. Bar No. 1510681)
Washington, DC 20530                      NATIONAL CONSUMER LAW CENTER
Tel.: (202) 514-4964                      7 Winthrop Square, Fourth Floor
E-mail: liam.c.holland@usdoj.gov          Boston, MA 02110
                                          (617) 542-8010
*Counsel for Defendants*                   ktaylor@nclc.org

7

Chavis Jones (D.C. Bar No. 1739219)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857
cjones@lawyerscommittee.org

\*application for admission *pro hac vice* granted

*Attorneys for Plaintiffs*

8